Law Offices

# COOPER & KIRKHAM, P.C.

357 Tehama Street, Second Floor
San Francisco, California 94103
(415) 788-3030
FAX (415) 882-7040

WRITER'S DIRECT CONTACT
(415) 788-3030 ext. 305
jdc@coopkirk.com

June 19, 2015

**VIA ECF**

The Honorable James Orenstein
United States Magistrate Judge
Courtroom 11D South
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

> Re:  *In re Espar Antitrust Litig.,* Case No. 1:15-MC-00940-JG-JO (Indirect Purchaser Actions Only)

Dear Judge Orenstein:

Reference is made to Your Honor's Order dated June 5, 2015 authorizing the filing of "supplemental letters … by June 19, 2015" by counsel who had filed a motion to be appointed interim class counsel prior to May 22, 2015. Plaintiffs Regional International Corp. and Mead's Automotive, LLC (collectively, "the *Regional International* Plaintiffs") submit this supplemental letter replying to "Indirect Purchaser Plaintiffs Raccoon Valley Transport, Inc. and Audrius Labaciauskas' Response to Regional International Corp. and Mead's Automotive's Motion for Appointment of Interim Co-Lead Class Counsel for Indirect Purchaser Plaintiffs", filed in *Regional International Corp., et al. v. Espar, Inc., et al.,* No. 1:15-cv-01798-JG-JO (ECF No. 22) on May 21, 2015 ("*Raccoon Valley* Plaintiffs' Response").

There have been substantial developments since the filing of the *Raccoon Valley* Plaintiffs' Response, which have mooted many of the points raised in the Response. At the time the *Raccoon Valley* Plaintiffs' Response was filed, there were two indirect purchaser actions in this Court, *Regional International*[1] and *Raccoon Valley*,[2] and

---

[1] *Regional International Corp., et al. v. Espar, Inc., et al.,* No. 1:15-cv-01798-JG-JO ("*Regional International*").

[2] *Raccoon Valley Transport, Inc., et al. v. Espar Inc., et al.,* No. 1:15-cv-01338-JG-JO ("*Raccoon Valley*").

The Honorable James Orenstein
United States Magistrate Judge
United States District Court, Eastern District of New York
June 19, 2015
Page 2 of 6

motions were pending in each to have its respective counsel appointed Interim Lead Counsel.  Since then, three additional Indirect Purchaser actions have been filed,[3] and a hearing was held at which this Court requested Indirect Purchaser Plaintiffs' counsel to attempt to reach a consensus on a governance structure for the litigation.

Following the hearing, *Regional International* Plaintiffs' counsel participated in discussions regarding a leadership framework with all other Indirect Purchaser Plaintiffs' counsel, except counsel in *Raccoon Valley* who declined to take part.  These discussions resulted in the agreed-upon governance structure that was proposed to the Court on June 12, 2015, and is supported by all Indirect Purchaser Plaintiffs' counsel except counsel for *Raccoon Valley*.  *See* ECF No. 26, at 1.  Pursuant to this proposal, all Indirect Purchaser Plaintiffs' counsel would form a single committee or working group, co-chaired by Josef D. Cooper and Francis O. Scarpulla, counsel for the *Regional International* Plaintiffs.  *Id.* at 2.  The working group would share and apportion the tasks necessary to bring these actions to a favorable conclusion on behalf of all Indirect Purchaser Plaintiffs.  *Id.*  Prior to its being submitted to the Court, counsel for *Raccoon Valley* was informed of the structure agreed to by all other counsel and invited to participate, but they have yet to directly respond.[4]  The *Regional International* Plaintiffs submit that each of the law firms supporting the working group proposal more than satisfy the requirements of Rule 23(g), and are fully qualified to participate on a leadership committee.[5]

The principal objection raised in the *Raccoon Valley* Plaintiffs' Response to the *Regional International* Plaintiffs' Motion for appointment as interim lead counsel was that there should be separate leadership appointed for those Indirect Purchasers who are end-users and for those who are resellers, due to a purported "conflict" between the two groups.  *Raccoon Valley* Plaintiffs' Response, at 1-2.  Since this argument is not mooted by the proposed working group structure, it will be addressed here.

The working group makes no distinction between counsel or cases in which the plaintiffs are solely end-users (*Davidson Transfer, Johnson* and *Raccoon Valley*), solely a reseller (*North Jersey Truck Center*), or both an end-user and a reseller (*Regional International*).  This is because there is no present conflict among end-user and reseller Indirect Purchaser Plaintiffs that requires separate counsel, and a long way to go before

---

[3] The cases filed after May 22, 2015 are *Davidson Transfer, LLC v. Espar, Inc., et al.,* No. 1:15-cv-03005-JG-JO ("*Davidson Transfer*");  *Johnson, et al. v. Espar, Inc., et al.,* No. 1:15-cv-03174-JG-JO ("*Johnson*"); and *North Jersey Truck Center, Inc. v. Espar, Inc.,* No. 1:15-cv-03290-JG-JO ("*North Jersey Truck Center*").

[4] On June 15, 2015, counsel for Raccoon Valley filed a letter to the Court indicating that they would be filing a response to the working group proposal by June 19, 2015.  *See* ECF No. 27.

[5] *See* ECF No. 26-1, 26-2, 26-3, 26-4, and 26-5.  The *Raccoon Valley* Plaintiffs' Response did not question the qualifications of the *Regional* Action Plaintiffs' counsel to serve as Lead Counsel pursuant to Rule 23(g), and it is not expected that they will challenge any member of the proposed Working Group on this basis.

The Honorable James Orenstein
United States Magistrate Judge
United States District Court, Eastern District of New York
June 19, 2015
Page 3 of 6

any divergence in their interests will arise. All of the complaints have claims for injunctive relief as to which the reseller vs. end-user distinction is irrelevant. None of the operative complaints has alleged "reseller" or "end-user" subclasses.[6] Moreover, as to the first order of business in this litigation – proving that the defendants violated the antitrust laws and that this violation had the effect of raising or stabilizing the prices of truck heaters – all Indirect Purchaser Plaintiffs and putative class members, whether end-users or resellers, have the same overriding interest in successfully litigating common issues of conspiracy, impact, pass-on by direct purchasers, and maximizing the total recovery obtainable from defendants.[7]

Only after there is a settlement or verdict in favor of plaintiffs, do distinctions between resellers and end-users become relevant to the division of litigation proceeds. It is the opinion of all counsel, except presumably those representing the *Raccoon Valley* plaintiffs, that it would be premature to work these distinctions into the leadership structure at this time. Moreover, if and when there is a settlement or plaintiffs succeed in establishing defendants' liability and a monetary judgment is obtained, other distinctions among Indirect Purchasers beyond placement in the chain of distribution will potentially become relevant to dividing and allocating the recovery. For example, place of purchase becomes relevant to the question of whether individual recoveries should be weighted to recognize differences in the number and strength of claims asserted by purchasers in Repealer versus Non-Repealer States.[8]

The *Raccoon Valley* Plaintiffs' Response relies on the fact that separate "Allocation Counsel [were] appointed by the Special Master" in the *DRAM Litigation* to represent the interests of resellers in support of their contention that there must be separate lead counsel for each group here.[9] The *Raccoon Valley* Plaintiffs acknowledge

---

[6] *Regional International* Amend. Compl., ECF No. 16, ¶¶ 16, 17, 19; *Davidson Transfer* Compl., ECF No. 1, ¶¶ 13, 14, 16; *Johnson* Compl., ECF No. 1, ¶¶ 14, 15, 17; *North Jersey Truck Center* Compl., ECF No. 1, ¶¶ 14, 15, 17.

[7] *See, e.g., Regional International* Amended Compl., at ¶ 24: Common questions for all indirect purchasers include: (a) whether Defendants and their co-conspirators engaged in a contract, combination and/or conspiracy to fix, raise, maintain and stabilize prices of Parking Heaters sold in the United States and/or for delivery into the United States; (b) the identity of the participants in the conspiracy; (c) the duration of the conspiracy and the acts carried out by Defendants and their co-conspirators in furtherance of the conspiracy; (d) whether the conspiracy violated the Sherman Act; (e) whether the conduct of Defendants and their co-conspirators caused injury to the businesses and property of the Plaintiffs and the other members of the Class; (f) the effect of the conspiracy on the prices of Parking Heaters sold in the United States and/or for delivery into the United States during the Class Period.

[8] "Non-Repealer" and "Repealer" states is the common designation used to differentiate between states whose antitrust laws follow the United States Supreme Court's decision in *Illinois Brick v. Illinois,* 431 U.S. 720 (1977), and those whose legislatures or courts allow indirect purchaser actions.

[9] *Raccoon Valley* Plaintiffs' Response, at 3 (quoting *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.,* 2013 U.S. Dist. LEXIS 188116, at *186 (N.D. Cal. January 8, 2013) ("*DRAM*")).

The Honorable James Orenstein
United States Magistrate Judge
United States District Court, Eastern District of New York
June 19, 2015
Page 4 of 6

that Allocation Counsel was appointed in *DRAM* "following the settlement of class allegations" and in the context of "negotiation of the plan of distribution" (Raccoon Valley Plaintiffs' Response, at 2-3),[10] but fail to recognize that is so because until then, it was not necessary to make such a distinction between the two groups.  It is also instructive to note that while the *DRAM* Special Master wanted all of the different interests relevant to distribution vigorously represented, he specifically found that there was no need to divide the class into formal subclasses.[11]

    In *Sullivan v. DB Invs.,*[12] litigation involving cases brought by both resellers and consumers of gem diamonds, a consensus-driven committee of the whole, similar to the working group proposed here, governed the plaintiffs' activities for most of the litigation. Unlike the *DRAM Litigation*, in *Sullivan*, the settlement agreement with the defendants contained provisions for the creation of formal Reseller and Consumer Subclasses.  Upon preliminary approval, the issue of a division of the settlement proceeds between the subclasses was referred to the Honorable Alfred M. Wolin.  At that time, counsel divided themselves up depending upon their client's subclass affiliation for the purposes of presenting the allocation issues to Judge Wolin.[13]

    Finally, it is not as if appointing the senior counsel in *Regional International* to co-chair the working group would be setting up counsel solely interested in promoting a narrow range of claims to dictate litigation strategy to those with different or broader interests.  To begin, as stated in the working group proposal, all counsel supporting the proposal fully expect that the working group will make decisions with regard to strategy, work assignments and other litigation issues by consensus, and rarely, if ever, will need the Co-Chairs to do more than mediate agreement.  Second, the allegations in *Regional International* present the greatest breadth of claims asserted in this litigation.  Not only are there both a reseller and an end-user named as plaintiffs, *Regional International* was the first action filed in this Court to seek equitable monetary relief on behalf of a putative nationwide class of Indirect Purchasers.[14]  These claims have the potential to provide monetary relief to thousands of parking heater purchasers in "non-repealer" states who have no monetary claims in *Raccoon Valley*.[15]  Thus, there is no risk under the working

---

[10] Citing *generally DRAM*, at *76 and quoting *id.* at *186.

[11] *Id.* at *226-230; *id. at* *272 ("While under certain circumstances subclassing may be necessary and beneficial, it is not a panacea, and courts have cautioned against the "Balkanization" of settlement classes, with its potential to add additional cost and invite delay to the proceedings.").

[12] *Sullivan, et al. v. DB Investments, et al.,* Case No. 04-2819-SRC (D.N.J.) ("*Sullivan*").

[13] *See* "Order Conditionally Certifying Settlement Class and Granting Preliminary Approval of Class Action Settlement", *Sullivan*, ECF No. 33, at ¶¶ 5-6, 8-9, enclosed herewith as Exhibit 1.

[14] *Regional International* Amend. Compl., ¶ 17.  These claims are also alleged in *Davidson Transfer* Compl., ¶ 14; *Johnson* Compl., ¶ 15; and *North Jersey Truck Center* Compl., ¶ 15.

[15] In addition, the damage claims in *Raccoon Valley* (*Raccoon Valley* Compl., ¶ 25) were brought on behalf of residents of only twenty (20) jurisdictions, which leaves purchasers in thirteen (13) other jurisdictions

The Honorable James Orenstein
United States Magistrate Judge
United States District Court, Eastern District of New York
June 19, 2015
Page 5 of 6

group proposal that the interests of any potential claimant or class member will be under-represented.

    Accordingly, for the foregoing reasons,[16] all of the objections in the *Raccoon Valley* Plaintiffs' Response, insofar as they remain relevant to the working group proposal, should be overruled.

Respectfully submitted,

By:   /s/ Josef D. Cooper
      Josef D. Cooper (*pro hac vice*)

Tracy R. Kirkham (*pro hac vice*)
John D. Bogdanov (*pro hac vice*)
COOPER & KIRKHAM, P.C.
357 Tehama Street, 2nd Floor
San Francisco, CA 94103
Telephone:   (415) 788-3030
Facsimile:   (415) 882-7040
E-mail:     jdc@coopkirk.com
          trk@coopkirk.com
          jdb@coopkirk.com

By:   /s/ Francis O. Scarpulla
      Francis O. Scarpulla (*pro hac vice*)

LAW OFFICES OF FRANCIS O. SCARPULLA
44 Montgomery Street, Suite 3400
San Francisco, CA 94104
Telephone:   (415) 788-7210
Facsimile:   (415) 788-0706
Email:     fos@scarpullalaw.com

---

commonly considered repealer states covered only in the Working Group proponents' complaints. *Regional International* Amend. Compl., ¶¶ 18-19; *Davidson Transfer* Compl., ¶¶15-16 ; *Johnson* Compl., ¶¶ 16-17 (24 jurisdictions, including two additional jurisdictions, Rhode Island and Virginia); *North Jersey Truck Center* Compl., ¶¶ 15-16.

[16] Plaintiffs also reference the points and authorities contained in the Letter to the Court dated June 12, 2015 (ECF No. 26) and Plaintiffs Regional International Corp. and Mead's Automotive, LLC's Motion Re: Appointment of Interim Co-Lead Class Counsel for Indirect Purchaser Plaintiffs (*Regional International*, ECF Nos. 17, 17-1, 17-2, 18).

The Honorable James Orenstein
United States Magistrate Judge
United States District Court, Eastern District of New York
June 19, 2015
Page 6 of 6

Lawrence H. Schoenbach
LAW OFFICES OF
LAWRENCE H. SCHOENBACH, PLLC
The Trinity Building
111 Broadway, Suite 701
New York, New York 10006
Telephone: (212) 346-2400
Facsimile: (212) 937-3100
Email:  schoenbachlawoffice@att.net

Philip A. Cala
Attorney at Law
Furniture Mart Office Bldg
Suite 1000
Jamestown, NY 14701
Telephone:  (716)483-2252
Email:  artlaw@windstream.net

*Counsel for Plaintiffs Regional International
Corp. and Mead's Automotive, LLC*

# EXHIBIT 1

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

RECEIVED

NOV 3 0 2005

AT 8:30
WILLIAM T. WALSH
CLERK
M

SHAWN SULLIVAN, ARRIGOTTI FINE JEWELRY
and JAMES WALNUM, on behalf of themselves and all
others similarly situated,

Plaintiffs,

v.

DB INVESTMENTS, INC., DE BEERS S.A., DE
BEERS CONSOLIDATED MINES, LTD., DE BEERS
A.G., DIAMOND TRADING COMPANY, CSO
VALUATIONS A.G., CENTRAL SELLING
ORGANIZATION, and DE BEERS CENTENARY
A.G.,

Defendants.

Civil Action No. 04-2819 (SRC)

**ORDER CONDITIONALLY
CERTIFYING SETTLEMENT
CLASS and GRANTING
PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT**

WHEREAS, the Plaintiffs and De Beers S.A., by and through their counsel of record, have entered into the settlement of this litigation, the terms of which are set forth in the Settlement Agreement dated November 8, 2005; and

WHEREAS, Counsel for the Settlement Class has requested an order preliminarily approving the terms and conditions of the Settlement as set forth in the Settlement Agreement and attached Appendices; and

WHEREAS, the Court has read and considered the Settlement Agreement and has determined that an inquiry should be made as to the fairness, reasonableness and adequacy of the proposed settlement, and good cause appearing therefore:

IT IS HEREBY ORDERED as follows:

1.     The terms and conditions of the Settlement Agreement are expressly incorporated herein by this reference. As used herein, any defined words or terms shall have the same meaning as defined in the Settlement Agreement.

2.    The Settlement Agreement is hereby preliminarily approved pursuant to Rule 23, Federal Rules of Civil Procedure, subject to further consideration thereof at the hearing on final settlement approval provided for below. The Court finds that the proposed settlement falls within the range of possible approval and is sufficiently fair, reasonable and adequate to warrant the dissemination of notice to the members of the proposed class apprising them of the proposed settlement.

3.    Professor Eric D. Green served as a settlement mediator, facilitating the arm's-length, serious and informed negotiation of the proposed settlement between experienced and knowledgeable counsel.

4.    For the purposes of this Settlement only, a class consisting of:

> All persons and entities located in the United States who purchased any Diamond Product from January 1, 1994 to the date of settlement class certification, provided that any purchases of Rough Diamonds made directly from a Defendant (including any entity in which any Defendant has a controlling interest and any affiliate of any Defendant), a Sightholder, or Defendants' Competitors shall be excluded, and provided further that any purchases of Polished Diamonds made directly from a Defendant (including any entity in which any Defendant has a controlling interest and any affiliate of any Defendant) shall also be excluded. The class shall also exclude Defendants, the officers, directors or employees of any Defendant, any entity in which any Defendant has a controlling interest, any affiliate of any Defendant, any federal, state or local governmental entity, and any judicial officer presiding over this Settlement, and any member of the judicial officer's family and court staff (the "Settlement Class")

is hereby conditionally certified, pending final approval of the Settlement herein.

5.    For the purposes of this Settlement only, there will be two

subclasses consisting of:

a.  All persons and entities in the Settlement Class
    who purchased any Diamond Product for resale
    (the "Indirect Purchaser Reseller Subclass");
    and

b.  All persons and entities in the Settlement Class
    who purchased any Diamond Product for use
    and not for resale (the "Indirect Purchaser
    Consumer Subclass").

6.    For the purposes of this Settlement only, the Court appoints as

Counsel for the Settlement Class:

On Behalf of the Indirect Purchaser Reseller Plaintiffs:

Joseph J. Tabacco, Jr.
BERMAN DEVALERIO PEASE TABACCO BURT & PUCILLO
425 California Street, Suite 2100
San Francisco, CA 94104
Telephone:     (415) 433-3200
Facsimile:     (415) 433-6382

John Maher
450 Springfield Avenue
Summit, NJ 07901-2611
Telephone:     (908) 277-2444
Facsimile:     (908) 277-6888 (fax)

Susan G. Kupfer
GLANCY BINKOW & GOLDBERG, LLP
455 Market Street, Suite 1810
San Francisco, CA 94105
Telephone:     (415) 972-8160
Facsimile:     (415) 972-8166

Francis O. Scarpulla
LAW OFFICES OF FRANCIS O. SCARPULLA
44 Montgomery Street, Suite 3400
San Francisco, CA 94104
Telephone:     (415) 788-7210
Facsimile:     (415) 788-0707

On Behalf of the Indirect Purchaser Consumer Plaintiffs:

Josef D. Cooper
Tracy R. Kirkham
COOPER & KIRKHAM, P.C.
655 Montgomery Street, 17th Floor
San Francisco, CA 94111
Telephone:     (415) 788-3030
Facsimile:     (415) 882-7040

Craig C. Corbitt
Christopher T. Micheletti
ZELLE HOFMANN VOELBEL MASON & GETTE, LLP
44 Montgomery Street, Suite 3400
San Francisco, CA 94104
Telephone:     (415) 693-0700
Facsimile:     (415) 693-0770

William Bernstein
Eric B. Fastiff
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111
Telephone:     (415) 956-1000
Facsimile:     (415) 956-1008

Stephen Katz
Howard B. Becker
KOREIN TILLERY
Gateway One on the Mall, 701 Market Street, Suite 300
St. Louis, Missouri 63101-1820
Telephone: (314) 241-4844
Facsimile: (314) 241-3525

7.     Solely within the context of and for the purposes of settlement, the Court finds that this action is properly maintained as a class action pursuant to Rules 23(b)(2) and (b)(3), Federal Rules of Civil Procedure, and that: (a) the members of the Settlement Class are so numerous that joinder would be impractical; (b) there are questions of law or fact which are common to the members of the Settlement Class, and those common questions predominate over individual questions; (c) the named Plaintiffs' claims are typical of the claims of the absent members of the Settlement Class; (d) the named Plaintiffs have and will fairly and adequately represent the interests of the absent members of the Settlement Class; (e) Counsel for the Settlement Class are experienced and will adequately represent the interests of the Settlement Class; and (f) this class action is superior to any other available method for the fair and efficient adjudication of the controversy.

8.     The Court grants the Parties' request that the Court refer the following issues to a Special Master for consideration and recommendation to the Court:

     a.  Division of the Aggregate Settlement Fund as between the Indirect Purchaser Reseller Subclass and the Indirect Purchaser Consumer Subclass;

     b.  The plan for dissemination of the Notice of Settlement (the "Notice Plan") and the proposed forms of Notice of Settlement;

     c.  The method and entitlement, if any, for members of the Settlement Class to file claims to share in the settlement proceeds and/or alternative proposals for disbursement of the settlement proceeds; and

     d.  The amount of incentive awards, if any, to be awarded to the named Plaintiffs and the amount of attorneys' fees, expenses and costs to be awarded to Counsel for the Settlement Class.

9.     Pursuant to Rule 53 and Rule 23(d) and (h)(4), Federal Rules of Civil Procedure, the Court will, by separate order, appoint a Special Master to make recommendations as provided in Paragraph 8 above. The Special Master will have the discretion to conduct proceedings as he chooses to assist him in issuing one or more report and recommendations on the above matters. In his discretion, the Special Master may request briefing and/or the submission of expert opinion(s), conduct hearings and work with counsel in any way he determines is most effective to prepare his report(s) for the Court. The Special Master shall submit his report(s) and recommendations to the Court for consideration on such date(s) as may be set by the Court. The Special Master's fee shall be paid from the Aggregate Settlement Fund. Any outcome from the Special Master proceedings will not constitute an event giving rise to the right of termination provided in Section VII(A) of the Settlement Agreement.

10.     Any putative member of the Settlement Class will have the right to exclude himself, herself or itself from the Settlement Class and the Settlement should he, she or it choose to do so. All persons and entities within the Settlement Class who submit valid and timely requests for exclusion from the Settlement Class shall not have any rights under the Settlement Agreement and shall not be bound by the Settlement Agreement or the Final Judgment and Order. All persons and entities within the Settlement Class who do not submit valid and timely requests for exclusion from the Settlement Class shall be bound by the Settlement Agreement and by the Final Judgment and Order.

11.     The Court will hold a hearing on final approval of the Settlement to consider: (a) the fairness, reasonableness and adequacy of the Settlement; (b) the dismissal with prejudice of this and any other action against the Defendants that is

pending in this Court containing the same or similar allegations to those alleged in this action, and brought on behalf of the members of the Settlement Class certified by this Order; and (c) the entry of the Final Judgment and Order in this action. A hearing is also appropriate for the Court to determine the amount to be awarded to Counsel for the Settlement Class in attorneys' fees for their services to the Settlement Class in this litigation and reimbursement of costs, and to allow adequate time for Counsel for the Settlement Class to submit their application for attorneys' fees and reimbursement of costs

12.     Any member of the Settlement Class who has not timely requested exclusion may appear at the final approval hearing and show cause why the Court should not approve the Settlement and dismiss the actions with prejudice as to the Defendants, and may appear at the hearing to support or oppose Counsel for the Settlement Class' application for attorneys' fees, expenses and costs; provided, however that no member of the Settlement Class shall be heard unless his, her or its objection or opposition is made in writing, signed by each individual member of the Settlement Class so objecting, and is filed, together with any papers or briefs in support of such objections, with the Diamonds Antitrust Litigation Settlement Administrator on the date to be fixed by the Court for putative members of the Settlement Class to exercise their right to exclude themselves from the Settlement Class. All such written objections and papers shall be sent by first-class mail, postage prepaid, to the Diamonds Antitrust Litigation Settlement Administrator. The objection shall include: (a) the complete name and residence or business address of the individual member of the Settlement Class so objecting (giving the address of any lawyer who represents the member of the Settlement Class is not sufficient); (b) a statement, signed under penalty of perjury by the objecting member of

7

the Settlement Class, that the member of the Settlement Class purchased Diamond Products during the Class Period; and (c) each ground for comment or objection and any supporting papers the member of the Settlement Class desires the Court to consider.

13. All proceedings in this and any other action against the Defendants that is pending in this Court containing the same or similar allegations to those alleged in this action, and brought on behalf of the members of the Settlement Class certified by this Order, except the *ANCO* and *British Diamond* actions, is hereby stayed, except as otherwise required to effectuate the terms of the Settlement Agreement, until such time as the Court renders a final decision regarding the approval of the Settlement and, if it approves the Settlement, enters the Final Judgment and Order as provided in the Settlement Agreement. The plaintiffs in related cases pending in the California and Arizona state courts are parties to the Settlement Agreement and have agreed to request the respective courts to stay those actions. It is desirable to maintain this related litigation under the sole jurisdiction of this Court to facilitate resolution of the remaining judicial issues related to the Parties' Settlement Agreement and to resolve all of the claims of the Settlement Class.

14. In the event the Settlement Agreement is terminated, then: (a) this Order shall have no force or effect, and all negotiations, proceedings, and statements made in connection with the Settlement Agreement shall be without prejudice to the right of any persons or entities; (b) the Parties expressly reserve all of their rights and preserve all applicable defenses; (c) this and any related actions shall revert to their respective procedural and substantive status prior to the date of execution hereof, and shall proceed as if the Settlement Agreement, and all other related orders and papers, had not been executed; and (d) in order to ensure that no Party is prejudiced by the passage of time,

8

any motions filed in this and any related actions after the Settlement Agreement is rendered null and void shall be deemed filed on the date of execution of the Settlement Agreement.

        15.    Neither this Order nor the Settlement Agreement shall constitute any evidence or admission of liability by the Defendants, nor shall they be offered in evidence in this or any other proceeding except to consummate or enforce the Settlement Agreement or terms of this Order. All matters leading up to or related to the settlement are confidential settlement communications inadmissible under Rule 408, Federal Rules of Evidence, and any and all other applicable federal and state laws.

Dated:    November 29, 2005

                                    The Honorable Stanley R. Chesler
                                    United States District Judge