# **Exhibit A**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: OPTICAL DISK DRIVE PRODUCTS ANTITRUST LITIGATION _____/ | MDL DOCKET NO M:10-2143 VRW<br><br>ALL CASES |

Three sets of attorneys have applied for appointment as interim class counsel to represent a class of indirect purchaser plaintiffs in the above litigation in accordance with FRCP 23(g)(3): the Larson and Zelle groups and the Hagens Berman firm. Because their applications contain attorney work product, all three groups requested that the precise terms of their applications remain confidential during the pendency of this litigation, a request the court honors by GRANTING counsel's administrative motions to seal these proposals. Docs #47, 51 & 54.

//

//

//

I

Pursuant to FRCP 23(g)(3), a "court may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." When making such an appointment, a court must find that the applicant is adequate under FRCP 23(g)(1), which requires that the court consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. Additionally, the court may consider any other matter pertinent to counsel's ability fairly and adequately to represent the interests of the class and, as the court has done here, may direct potential class counsel to provide information on any subject pertinent to the appointment and to propose terms for attorney fees and costs in representing a prospective class. FRCP 23(g)(1)(B) & (C).

With respect to attorney fees and costs, it appears that some of the statutes pursuant to which indirect purchasers seek recovery provide for shifting fees and costs in favor of a prevailing plaintiff. To the extent that a class of indirect purchaser plaintiffs obtains a recovery pursuant to a statute entitling them to fee shifting, the court will award fees and costs pursuant to that statute using the now almost universally accepted lodestar methodology. This approach makes sense in a fee shifting regime because the party against whom the award is made has an

incentive to challenge any unreasonable fee or cost award, affording the court the benefit of adversary presentations.

Not every recovery on behalf of a class of indirect purchasers may be subject to a fee shifting regime for at least two possible reasons: either the statute in question does not provide for fee shifting or the recovery is obtained in a settlement that creates a common fund. There is, of course, a third possibility: the recovery may be obtained pursuant to two or more claims, one or more of which provides for fee shifting while others do not. Where possible, the court will attempt to determine fees based on truly adversarial presentations. Because that is not always possible, it is appropriate to consider the matter of fees and costs at the outset. This is particularly appropriate here in which competing applications have been presented by able counsel to assist the court in discharging its responsibility to protect the interests of the putative class. See, e g, <u>Gulf Oil Co v Bernard</u>, 452 US 89, 100 (1981) ("Because of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties.").

### A

Having reviewed the parties' submissions, the court finds that all applicants meet the baseline requirements set forth in FRCP 23(g)(1)(A)(ii) and (iii). All three parties appear to have prepared their proposals independently and are experienced in prosecuting complex litigation in antitrust and other areas of law;

3

some of the lawyers in each group have appeared before the undersigned in other litigation and have consistently displayed high levels of skill and professionalism. The law firms represented in each of the three applications, by virtue of their collective experience and resources, easily satisfy the remaining requirements of FRCP 23(g)(1)(A). The undersigned has previously noted a number of qualitative criteria by which to evaluate the quality of bids by counsel seeking to represent a class. See, e g, In re Oracle Sec Litig, 136 FRD 639 (N D Cal 1991) ("Oracle III"). The Zelle application claims one other such criterion when it proposes to keep any settlement obtained in an escrow account "until the end of the case." While this would presumably serve as an incentive to conclude the entire litigation, escrowing any interim settlement might discourage counsel from activities to maximize recovery from other defendants. The benefit to the class of escrowing interim settlements is thus difficult to predict and the court gives this little weight in a qualitative evaluation of the competing applications.

Before assessing the three applications, the court briefly summarizes each proposal in general terms. All three proposals describe the background of each of the firms seeking designation as interim counsel. As noted, each brings impressive skills and experience to the proposed task. It is difficult to distinguish among the three applications on this basis. No doubt realizing that their backgrounds would not point to a clear choice, the three applicants devote most of their attention to their respective fee and cost proposals and an analysis of the prospects for a recovery. From these criteria, particularly the latter, a

4

clear choice emerges. That choice is the Hagens Berman firm.

### B

The Larson Group proposes a fee structure at the lessor of a multiplier of its lodestar or a percentage fee keyed to two factors: (i) the stage of the litigation at which recovery is obtained, with increases in the percentage fee with each succeeding stage of the litigation; and (ii) the amount of the recovery, with decreases in the percentage fee as the amount of the recovery increases. In addition, the Larson Group proposes a cap on expenses at each of the stages of the litigation set forth in its proposal. The Larson Group also requests that all parties be required to sign a single protective order and electronic discovery protocol, utilize a single document depository and unified document identification system and adopt translation procedures—proposals which the court adopts below—but it is not clear that the Larson Group's application is contingent on the implementation of these processes.

The Zelle Group also proposes a percentage fee, but one that is less keyed to litigation stages than that of either the Larson or Hagens Berman proposals. The disadvantage of not tailoring a percentage to the stage of the litigation at which a recovery is obtained is the risk of a relatively higher percentage fee charged to the class for a recovery obtained at an early stage in the litigation. To be sure, the stage of litigation is not precisely keyed to the amount of work entailed in obtaining a recovery, but is probably a fairly good proxy. Thus, it would seem

5

appropriate that as the stages of the litigation advance, the percentage devoted to fees should reflect the likely greater amount of attorney work involved.[1] It is possible that the undersigned's reference to Judge Kaplan's decision in In re Auction Houses Antitrust Litig, 197 FRD 71 (SDNY 2000), may have influenced the Zelle Group to structure its fee proposal as it did. Due to the relatively low recovery at which no fee would be charged under the Zelle Group proposal, the amount of the Zelle Group's fee at substantial levels of recovery would vastly exceed the fees in the Larson and Hagens Berman proposals.

The Hagens Berman proposal, like that of the Larson Group, sets forth a fee percentage which increases with the stages of litigation and declines as the amount of the recovery rises. The stages of litigation set forth in the Hagens Berman proposal are very similar to those in the Larson Group proposal, all being logical steps in the litigation at which a recovery, if there is to be one, is likely to be obtained. These proposals thus afford enhanced compensation to the lawyers as the likely amount of work involved in securing a recovery increases (and provides for a lower fee for early stage recoveries). In this regard, the Larson and

---

[1] While others have argued for an increasing fee award as amount of the award increases, see, e g, Jill E Fisch, *Lawyers on the Auction Block: Evaluating the Selection of Class Counsel by Auction*, 102 Colum L Rev 650, 679 (2002) ("The increasing percentage bid structure better addresses the moral hazard problem. By increasing the reward to counsel, increasing percentage bids reduce the incentive for cheap settlements and motivate counsel to pursue high levels of recovery."), this court is not convinced that an increasing award structure would inure to the benefit of the class. In such cases, the class, which would be shouldering more risk in passing up an early settlement offer, would ultimately receive less reward. Even increasing fee advocates, however, recognize that "[i]ncreasing fees are particularly problematic in cases[, such as this,] in which the court cannot readily predict the recovery at the time it selects counsel." Id.

Hagens Berman proposals are superior to the Zelle proposal.

The Zelle and Larson groups also propose a monetary cap on deduction from the class's recovery for out-of-pocket expenses. The Hagens Berman proposal entails one fee that covers both compensation of attorneys and reimbursement of attorneys' out-of-pocket expenses. The court notes that expense caps of the Larson and Zelle proposals may be more problematic for the class than simply folding expense recovery into the fee as Hagens Berman proposes. As expenses approach the expense cap, the existence of a cap might serve as a determent to incur the expense even if to do so might be in the class's interest. The overall fee and expense pool approach, on the other hand, avoids or, at least, militates against this potential conflict. Furthermore, to the extent that services paid for by out-of-pocket expenditures and attorney inputs are substitutes one for the other, a reimbursement regime which promises one hundred cents on the dollar (full recovery) tends to encourage those expenditures relative to compensation keyed to a percentage of recovery. The Hagens Berman proposal thus tends to put class counsel's evaluation of attorney and non-attorney inputs on the same plane and affords an incentive to seek the optimal mix of the two.

The court, in requesting bids from prospective counsel seeking recovery on behalf of indirect purchaser plaintiffs, understood fully that counsel, at this early stage of litigation, have limited information concerning the probability of a recovery and the amount or range of such recovery. By contrast, plaintiffs' counsel in a fraud-on-the-market securities class action typically

7

have more readily available information to size up potential recovery than do counsel here.  The price movement of the security in question is known and the alleged unlawfully undisclosed or misstated information that distorted the price of the stock has come into the market when the typical fraud-on-the-market case commences.  While the amount of the price distortion and the period of distortion may not be completely apparent at the onset of a fraud-on-the-market class action, experienced counsel are nevertheless able to make reasonably astute estimates of the value of such litigation.  By contrast, potential recovery by indirect purchaser plaintiffs in this litigation is subject to a greater variety of imponderables. Nonetheless, Hagens Berman has presented a very impressive array of possible recovery scenarios that suggest a high level of analysis of potential recoveries.  This feature is what most distinguishes the Hagens Berman application from the others.

      The fee proposals likewise favor Hagens Berman.  As noted above, the expense caps proposed by the Zelle and Larson Groups give the court some hesitation.  The approach taken by Hagens Berman, which seeks to fold expenses into a total fee and expense deduction, is preferable.  Although Hagens Berman's declining percentage fees at the larger recovery amounts may be less than the Larson or Zelle Groups' proposal, as a practical matter the Larson Group's lodestar multiplier cap may make it the lowest cost proposal—at least for some recovery amounts.  But this slight advantage is outweighed by the overall quality and relative sophistication of Hagen Berman's analysis of the potential recovery that indirect purchaser plaintiffs may achieve.

8

## II

For these reasons, after reviewing all three high-quality proposals, the court finds that Hagens Berman will best be able to represent the interests of the indirect purchaser plaintiffs as interim class counsel in the above-captioned matter. The court therefore APPOINTS the Hagens Berman firm as interim class counsel for indirect purchaser plaintiffs pursuant to FRCP 23(g)(3). Appointment of class counsel pursuant to FRCP 23(g)(1) will be made when and if a class of indirect purchaser plaintiffs is certified. As interim counsel, the Hagens Berman firm may coordinate its efforts with additional counsel pursuant to its proposal and shall identify, in a letter to the court submitted on or before June 18, 2010, a discovery coordinator.

Additionally, the court ADOPTS the administrative procedures put forth by the Larson Group. Absent further order of court, on or before August 1, 2010, the parties are ORDERED to meet and confer in order to execute a single protective order and electronic discovery protocol, to establish a single document depository and unified document identification system and to adopt translation procedures.

IT IS SO ORDERED

VAUGHN R WALKER
United States District Chief Judge

9