UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X

IN RE PARKING HEATERS                                   MEMORANDUM
ANTITRUST LITIGATION                                    AND ORDER

This Document Relates To:                               15-MC-0940 (JG) (JO)
ALL ACTIONS
--------------------------------------------------------X

James Orenstein, Magistrate Judge:

  The plaintiffs in these eleven consolidated actions, each acting on behalf of a putative class of

direct or indirect purchasers of parking heaters, have all asserted claims relating to the alleged existence

of a price fixing conspiracy in the sale of parking heaters for commercial vehicles in the aftermarket.

*See* Docket Entry ("DE") 1 (consolidation order).[1]  Several parties now seek to appoint interim lead

class counsel for the putative classes of direct and indirect purchasers, respectively.[2]  For the reasons

set forth below, I now appoint the firms of Hausfeld LLP ("Hausfeld") and Roberts Law Firm P.A.

("Roberts") as co-lead interim counsel for the putative class of direct purchasers and the Law Offices

of Francis O. Scarpulla and Cooper & Kirkham (collectively, "Scarpulla and Cooper") as co-lead

interim counsel for the putative class of indirect purchasers; I accordingly deny the remaining motions

seeking the appointment of others as interim lead class counsel.

---

[1]  The direct purchaser actions include *Triple Cities Acquisition LLC v. Espar Inc.*, 15-CV-1343 (JG) (JO); *Nat'l Trucking Reclamation Fin. Svcs. v. Espar Inc.*, 15-CV-2310 (JG) (JO); *Trailer Craft Inc. v. Espar Inc.*, 15-CV-2411 (JG) (JO); *Guay Bros. Co. v. Espar Inc.*, 15-CV-3225 (JG) (JO); *Advance Diesel Svc. v. Espar Inc.*, 15-CV-4350 (JG) (JO); and *Myers Equip. Corp. v. Espar Inc.*, 15-CV-3872 (JG) (JO). The indirect purchaser actions include *Reg'l Int'l Corp. v. Espar Inc.*, 15-CV-1798 (JG) (JO); *Raccoon Valley Transp. Inc. v. Espar Inc.*, 15-CV-1338 (JG) (JO); *Johnson v. Espar Inc.*, 15-CV-3174 (JG) (JO); *Davidson Transfer, LLC v. Espar Inc.*, 15-CV-3005 (JG) (JO); and *N. Jersey Truck Ctr., Inc. v. Espar Inc.*, 15-CV-3290 (JG) (JO). Unless otherwise noted, all docket citations refer to the consolidated docket.

[2]  *See* 15-CV-1343 (JG) (JO), DE 14 (Hausfeld's motion for appointment as interim lead class counsel for direct purchasers); 15-CV-2310 (JG) (JO), DE 10 (Roberts' motion of for same); 15-CV-2411 (JG) (JO), DE 9 (motion of Cera LLP ("Cera") for same); 15-CV-3225, DE 8 (motion of Kaplan Fox & Kilsheimer LLP ("Kaplan") for same); 15-CV-1338 (JG) (JO), DE 17 (motion of Hagens Berman Sobol Shapiro LLP ("Hagens Berman") for appointment as interim lead class counsel for indirect purchasers); 15-CV-1798 (JG) (JO), DE 17 (Scarpulla and Cooper's motion for same).

I.    Background

On March 16, 2015, Triple Cities Acquisition LLC ("Triple Cities") (a direct purchaser of parking heaters, represented by Hausfeld) and Raccoon Valley Transport, Inc. ("Raccoon Valley") (an indirect purchaser, represented by Hagens Berman) separately filed the first two of eleven class action lawsuits brought to date accusing an array of defendants of participating in a conspiracy to suppress and eliminate competition in the sale of parking heaters for commercial vehicles in the aftermarket. The defendants in the various actions include Espar Inc. ("Espar"), two of its executives, and its related companies; Webasto Products North America, Inc. ("Webasto"), along with its related companies; Proheat Mechanical Systems Inc. and its related companies; Marine Canada Acquisition Inc.; and other as-yet unidentified co-conspirators.

Several motions for appointment as interim lead class counsel were filed between April 15 and May 18, 2015. At a conference on May 22, 2015, I encouraged the parties to confer further about the motions in an attempt to resolve the matter consensually. 15-CV-1343 (JG) (JO), DE 27 (minute entry).

On June 5, 2015, the direct purchaser plaintiffs reported that they had agreed on an executive committee consisting of four firms, one of which would later be appointed as its chair: Hausfeld, Roberts, Cera and Kaplan. DE 9. That proposal collapsed over disagreements about which firm should lead the committee. The four firms then made separate proposals: Kaplan moved to be appointed sole or co-lead counsel, Hausfeld and Roberts proposed to be co-leaders together, and Cera renewed its application for a four-firm committee, with the chair to be selected by the court. DE 25; DE 28; DE 30. In addition to the support of their own clients, Hausfeld and Roberts also have the support of plaintiff Myers Equipment Corp., represented by the firm of Steyer Lowenthal Boodrookas Alvarez & Smith LLP. DE 35.

2

The indirect purchaser plaintiffs similarly could not reach any agreement. *See* DE 6. Accordingly, Scarpulla and Cooper reinstated their request to serve as co-lead counsel, now supported by all of the other indirect purchaser plaintiffs in the consolidated cases except Raccoon Valley, and added a request that Steven Williams of Cochett, Pitre & McCarthy be appointed as liaison counsel for the group to coordinate administrative matters with the court. *See* DE 26; *see also* Federal Judicial Center, *Manual For Complex Litigation* (the "*Manual*") § 10.221 (4th ed. 2004). Hagens Berman likewise renewed its motion to serve as lead counsel for the indirect purchasers.

II.    Discussion

A court "may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3). The role of such counsel is to "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(4). Appointing lead counsel helps to promote efficiency and avoid unruly proceedings. *See Farber v. Riker-Maxson Corp.*, 442 F.2d 457, 459 (2d. Cir. 1971); *MacAlister v. Guterma*, 263 F.2d 65, 68-69 (2d Cir. 1958). An interim appointment at this stage, while not required, can help "clarif[y] responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement." *Manual* § 21.11.

A court considering the appointment of interim lead class counsel should consider the same factors that a court appointing lead counsel for a certified class must consider, including the candidates' qualifications and competence, their ability to fairly represent diverse interests, and their attorneys' ability "to command the respect of their colleagues and work cooperatively with opposing counsel and the court." *Manual* § 10.224; *see* Fed. R. Civ. P. Rule 23(g)(1)(C). Also appropriate for consideration is anything else that is "pertinent to counsel's ability to fairly and adequately represent

3

the interests of the class," Fed. R. Civ. P. 23(g)(1)(B), including "(1) the quality of the pleadings; (2) the vigorousness of the prosecution of the lawsuits; and (3) the capabilities of counsel." *In re Converse Tech., Inc. Derivative Litig.*, 2006 WL 3761986, at *2-3 (E.D.N.Y. Sept. 22, 2006). Ultimately, the court's task in deciding these motions is "to protect the interests of the plaintiffs, not their lawyers." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.* ("*Interchange*"), 2006 WL 2038650, at *4 (E.D.N.Y. Feb. 24, 2006).

At the outset, I note that the factors relating to the qualifications and competence of counsel and the quality of their work are in equipoise: all of the movants appear eminently qualified and I am confident that each candidate would serve the putative classes quite ably in the litigation of these consolidated actions. Thus, while the matter is unquestionably an important one for all concerned, I have no doubt that in a very important sense any resolution of the instant motions could easily be seen as serving each putative class's best interests. But in the absence of agreement, I must necessarily try to discern, at this early stage of the litigation, which of several very good choices will be the best for the putative classes. In attempting to make that decision, I offer no view of the merits of the parties' substantive legal and factual disputes, which are irrelevant to the analysis of the instant motions.

A.    Direct Purchasers

I conclude that Hausfeld and Roberts are in the best position to represent the interests of the direct purchaser class. Both firms have already demonstrated their ability to work cooperatively with each other, with the court, and most importantly, with the other attorneys representing plaintiffs with significant interests in this litigation. They have ample resources to conduct the litigation and a wealth of experience in this district. Hausfeld has also already demonstrated its leadership by filing the first direct purchaser complaint. Both firms have conducted thorough and extensive pre-filing

4

investigations and have shown their legal work to be detailed and high quality, and their joint application has the support of another plaintiff.[3]

The choice between the two competing candidates for lead counsel is a close one. To be sure, Kaplan has likewise performed a thorough investigation. It learned that the Justice Department had granted conditional leniency to Webasto and was the first plaintiff to name two former Espar officers as individual defendants. I conclude that the more widespread support for Hausfeld and Roberts makes their leadership preferable for sophisticated plaintiffs who presumably are in the best position to assess their best interests.

I also conclude that appointing Hausfeld and Roberts is preferable to the four-firm committee that Cera proposes. The parties themselves were unable to reach a consensus about how to make such a leadership structure work, and I doubt that judicial fiat will succeed in creating a workable committee where the parties themselves did not. Moreover, particularly in light of the extent to which prior proceedings may have clarified some of the issues in dispute in these consolidated cases, there seems no need for the inevitable redundancies and inefficiencies attendant to a four-firm leadership structure.[4] While I am confident that Hausfeld and Roberts will welcome the input and participation of all of the plaintiffs' attorneys in deciding how best to advance the interests of the putative class, I conclude there is no need for all of them to be included in the putative class's interim leadership.

---

[3] In the parties' written submissions, Hausfeld noted that its client, Triple Cities, was the only plaintiff to whom the United States Department of Justice had thus far provided notice that it was a victim of the alleged anticompetitive conduct. *See* DE 28 at 3. While that would provide it with an advantage that other named plaintiffs lack in terms of positioning itself as an adequate class representative, I have assumed that advantage would be a transient one. At oral argument on August 7, 2015 (the proceedings of which have yet to be transcribed), Cera reported that its client Trailer Craft had received a similar notification.

[4] For example, at least one of the defendants has admitted the existence of the alleged conspiracy. *See, e.g.*, 15-CV-1343 (JG) (JO) DE 1 ¶ 5 (Triple Cities' Complaint) (citing *United States of America v. Espar Inc.*, 15-CR-0028 (JG), DE 16 ¶ 2 (E.D.N.Y. Mar. 12, 2015) (Espar's Plea Agreement, admitting to participation in criminal antitrust conspiracy)).

5

B.    Indirect Purchasers

I conclude for similar reasons that Scarpulla and Cooper are in the best position to represent the interests of the indirect purchase plaintiff class. Scarpulla and Cooper have the support of all of the other named indirect purchaser plaintiffs other than Hagens Berman's clients. They have already demonstrated their ability to work cooperatively with the court and with the other non-lead counsel, they have the support of a larger and more diverse group of clients, and those clients collectively advance a broader array of the legal theories at issue in this litigation.

Hagens Berman offers several arguments in opposition to the Scarpulla and Cooper proposal. First, it contends that only one lead counsel is necessary and that a joint leadership structure would be "overkill, inefficient and promote attorney lodestar over maximizing class member recovery." DE 31 at 3. They are of course correct that, as noted above, there are features of this case that render it less complex than it might otherwise be. But the difference between one law firm and two as leaders seems ultimately a minor one – in either case, multiple attorneys (either in one firm or in more) would necessarily perform litigation tasks and make tactical and strategic decisions for the class. A variety of voices is beneficial for the class, so long as it produces neither paralysis nor inefficiency. The fact that all of the other plaintiffs favor the appointment of Scarpulla and Cooper over Hagens Berman persuades me that those who are best informed and have the greatest incentive to keep attorney fees in check have decided that the risk of inefficiency attendant to the proposed two-firm leadership is an acceptable one.

Second, Hagens Berman notes that it was the first firm to file any case against Espar, the first firm to move for interim lead counsel, the first firm to propose case management procedures and the first firm to propose document production and confidentiality orders. DE 31 at 5. Those are all factors in the firm's favor, but only to a point. They certainly show that Hagens Berman can be a valuable

member of any team of lawyers representing the putative class. But the fact that the firm would consider withholding its expertise from the class leadership if it is not appointed by itself to that role – a threat Hagens Berman made explicit at oral argument – raises some doubts about how well the firm would represent the interests of class members other than its own clients if given such exclusive authority. While the efficiency of a sole leader may have its advantages, they appear in this case to be outweighed by the risk of internal strife within the putative class if Hagens Berman is appointed interim lead counsel, and alleviated by the explicit commitment made by Scarpulla and Cooper at oral argument to solicit the views of other putative class members.

Finally, Hagens Berman asserts that no firm should be appointed as interim lead counsel for a putative class of all indirect purchasers, on the ground that the mix of resellers and end users within that group will necessarily create a disabling conflict of interest. *See* 15-CV-1798, DE 22 at 4; DE 31 at 2. I disagree. As Scarpulla and Cooper argue in opposition, it may well be preferable, and entirely proper, for a putative class of indirect purchasers to try to maximize its collective recovery and then divvy up the spoils among themselves pursuant to judicially supervised procedures. DE 29 at 2-3. Indeed, in articulating the factors to consider in appointing interim lead class counsel, the *Manual* notes the inevitability that some class members will have interests that may ultimately diverge in some ways from those of other members, and cites as a positive attribute a lawyer's ability to fairly represent such diverse interests. *See Manual* § 10.224.

In any event, whichever side is correct about the significance of the existence of different types of indirect purchasers in that putative class, I am satisfied that the record does not yet establish that any actual conflict exists, or that any potential conflict cannot be waived. I therefore conclude that the instant motions can and should be decided without first fully determining the nature and extent of any such conflict. That issue can be addressed, if it ripens, in the context of a motion to disqualify interim

lead class counsel, or in the context of a motion to certify a class defined to include both end users and resellers of parking heaters.

III.    <u>Conclusion</u>

For the reasons set forth above, I appoint the Hausfeld and Roberts firms as co-lead interim counsel for the putative class of direct purchasers, the Scarpulla and Cooper firms as co-lead interim counsel for the putative class of indirect purchasers, and Steven Williams as liaison counsel for the indirect purchasers; I accordingly deny the remaining motions seeking the appointment of others as interim lead class counsel.

SO ORDERED.

Dated: Brooklyn, New York
       August 11, 2015

_____/s/_____
JAMES ORENSTEIN
U.S. Magistrate Judge

8